UNITED STATES DISTRICT COURT

DISTRICT OF NORTH DAKOTA

SOUTHEASTERN DIVISION

| | |
|---|---|
| FAIR HOUSING OF THE DAKOTAS, INC., LARRY NORSTEDT, BETTY MARTIN, CLARICA MARTIN, LACEY ANDERSON, KRISTINA HILDE, each individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDMARK PROPERTY MANAGEMENT, INC.,<br><br>Defendant. | Case No. 3:09-cv-58 |

[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF

## I. INTRODUCTION

1. This class action seeks injunctive, declaratory and monetary relief against defendant Goldmark Property Management, Inc. ("Goldmark"), one of North Dakota's largest property management firms, for committing discriminatory housing practices on the basis of disability in violation of the federal Fair Housing Act.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 42 U.S.C. § 3613 and by 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United

States.

3. Venue is proper in that the claims alleged herein arose, in part, within Fargo, North Dakota.

### III.  **PARTIES**

4. Plaintiff Fair Housing of the Dakotas ("FHD") is a nonprofit corporation organized under the laws of the State of North Dakota with its principal place of business located in Bismarck, North Dakota.  One of the FHD's specific purposes and goals is the promotion of equal opportunity in the renting, purchasing, financing and advertising of housing and the elimination of all forms of illegal housing discrimination.  To this end, the activities in which the FHD engages in include, but are not limited to: providing support, encouragement and assistance to all seeking equal access to housing in North Dakota.  The focus is on fair housing, and in furtherance thereof, the FHD will:  (1) provide community education on fair housing issues and encourage public involvement in promoting fair housing within the community; (2) provide information, support, and assistance when possible to anyone pursuing any rights and/or remedies allowed by law related to fair housing; (3) engage in any means allowed by law to uncover systematic and/or specific acts of illegal housing discrimination; and (4) become involved in other housing and/or civil rights activities that will benefit residents of the State of North Dakota.  FHD is an aggrieved individual within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(i), and North Dakota Century Code § 14- 02.5-01(1).

5. Plaintiff Larry Norstedt is a resident of Bismarck, North Dakota.  Mr. Norstedt is a person with a disability within the meaning of the federal Fair Housing Act,

42 U.S.C. § 3602(h), and the North Dakota Century Code §14-02.5-01(6).  Mr. Norstedt was denied housing because of Goldmark's discriminatory policies and practices.  Accordingly, Mr. Norstedt is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), and North Dakota Century Code § 14- 02.5-01(1).

6. Plaintiffs Betty Martin and Clarica Martin, mother and daughter, are residents of Fargo, North Dakota.  Betty Martin is a person with a disability within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h), and the North Dakota Century Code §14-02.5-01(6).  Betty and Clarica Martin resides in an apartment building managed by Goldmark, where she sought to obtain an assistance animal and was deterred because of Goldmark's discriminatory policies and practices.  Accordingly, Betty and Clarica Martin are aggrieved persons within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), and North Dakota Century Code § 14- 02.5-01(1).

7. Plaintiff Lacey Anderson is a resident of Moorhead, Minnesota.  Ms. Anderson is a person with a disability within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h), and the North Dakota Century Code §14-02.5-01(6).  Ms. Anderson resides with an assistance animal in an apartment building managed by Goldmark, where she is subject to Goldmark's discriminatory policies and practices.  Accordingly, Ms. Anderson is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), and North Dakota Century Code § 14- 02.5-01(1).

8. Plaintiff Kristina Hilde is a resident of Moorhead, Minnesota.  Ms. Hilde is a person with a disability within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h), and the North Dakota Century Code §14-02.5-01(6).  Ms. Hilde resides with

an assistance animal in an apartment building managed by Goldmark, where she is subject to Goldmark's discriminatory policies and practices. Accordingly, Ms. Hilde is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), and North Dakota Century Code § 14- 02.5-01(1).

9. Defendant Goldmark Property Management, Inc. is a North Dakota corporation with its principal office located in Fargo, North Dakota. Goldmark manages and operates numerous large, residential rental properties including, but not limited to, properties located in Bismarck and Fargo, North Dakota, Moorhead and Crookston, Minnesota, Des Moines, Iowa, and Omaha, Nebraska. The residential rental properties managed and operated by Goldmark are hereinafter referred to as the "Goldmark properties." The Goldmark properties contain over 9,000 residential units. Each of the residential units at the Goldmark properties is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

10. Plaintiffs are informed and believe, and thereupon allege, that Goldmark manages and operates the Goldmark properties on behalf of the owners of those properties. Each of those owners may be liable for the statutory violations alleged in this action. Accordingly, plaintiffs anticipate amending this pleading once they have established through discovery the identity of the persons or entities who own the Goldmark properties operated by Goldmark in violation of the federal Fair Housing Act.

### IV. CLASS DEFINITION AND CLASS ALLEGATIONS

11. Definition. Plaintiffs Larry Norstedt, Betty Martin, Clarica Martin, Lacey Anderson, and Kristina Hilde bring this action on their own behalf and on behalf of all persons with disabilities or persons associated with them who, since June 16, 2007,

have (1) sought to occupy a dwelling at a Goldmark property with an assistance animal, or (2) occupied a dwelling at a Goldmark property with an assistance animal.

12. <u>Numerosity</u>.  Plaintiffs estimate that the plaintiff class contains at least 40 tenants or prospective tenants.  The plaintiff class therefore is so numerous that joinder of all members is impractical.

13. <u>Commonality</u>.  There are questions of law and fact common to the class: This action challenges defendants' published policies, including defendants' policies with respect to granting reasonable accommodation requests for permission to occupy a dwelling with an assistance animal, charging additional deposits and rents in connection with granting that request, and deterring or discouraging disabled persons from applying for housing because of Goldmark's policies.

14. <u>Typicality</u>.  The claims of the representative plaintiffs are typical of the claims of the class.  Plaintiffs Larry Norstedt, Kristina Hilde, Lacey Anderson, Clarica Martin and Betty Martin have been subjected to the same discriminatory policies and practices imposed by Goldmark as the unnamed class members.  The representative plaintiffs' claims for relief are typical of the claims of current, past, prospective and future Goldmark tenants.

15. <u>Representation</u>.  The representative plaintiffs will fairly and adequately protect the interests of the class.

16. <u>Certification</u>.  A class action is maintainable in this matter because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Goldmark.  In addition, a

class action is maintainable because Goldmark, by promulgating and enforcing a discriminatory housing policy, has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.  Moreover, questions of law and fact in common to the class, including whether Goldmark discriminates against disabled persons using or seeking to use assistance animals in violation of the federal Fair Housing Act, predominate over any questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## V.  **FACTS**

### A.  Introduction

17.     Goldmark has engaged in a pattern or practice of discrimination against persons with disabilities on account of their disabilities in the operation of its residential rental properties.  Defendant's pattern or practice of discrimination includes, but is not limited to:

   a.   Discriminating in the rental, or otherwise making unavailable or denying, a dwelling to prospective renters because of disability;

   b.   Discriminating in the rental, or otherwise making unavailable or denying, a dwelling to a renter because of disability of any person associated with that renter;

   c.   Imposing different terms, conditions, or privileges relating to the rental of dwellings because of disability;

   d.   Imposing different rental charges for rental of a dwelling because

of disability;

e. Using different qualification criteria or applications, or rental standards or procedures, such as application requirements, application fees, or rental approval procedures, or other requirements because of disability;

f. Using different provisions in leases such as those related to rental charges, security deposits, or lease terms because of disability;

g. Discouraging any person from renting a dwelling because of disability;

h. Communicating to any prospective renter that he or she would not be comfortable or compatible with existing residents of an apartment complex because of disability;

i. Employing codes or other devices to segregate or reject applicants or renters because of disability;

j. Making statements, orally and in writing, indicating a limitation, preference or discrimination, or the intent to discriminate, based on disability;

k. Enforcing lease provisions which preclude rental of a dwelling because of disability;

l. Inquiring as to the nature or severity of a disability beyond that required to determine qualification for a reasonable accommodation;

m. Refusing to grant reasonable accommodations;

n.  Imposing unlawful conditions upon the application for a reasonable accommodation; and,

o.  Interfering with any person in his or her use or enjoyment of a dwelling because of disability.

## B.  Larry Norstedt

18.  Mr. Norstedt, 65, is disabled, suffering from a variety of mental and physical impairments, including anxiety, that substantially limit his major life activities.  Since 1993, he has received benefits from the Social Security Administration because of his disability.

19.  In May 2009, Mr. Norstedt's doctor recommended that he obtain an assistance animal to help ameliorate the effects of this disabilities.  Based on that recommendation, Mr. Norstedt adopted Hope, a small Pug dog, who has lived with Mr. Norstedt ever since.

20.  During the Summer of 2009, Mr. Norstedt relocated to Bismarck in order to live closer to his doctors and family.  In July 2009, he applied for rental of an apartment at East Brook II, an apartment complex managed by Goldmark.  As part of that application process, the Goldmark manager told Mr. Norstedt that he would have to pay an additional non-refundable fee to apply for the right to keep Hope as his assistance animal.  The manager also told Mr. Norstedt that if his application were accepted, he would have be pay an additional non-refundable assistance animal security deposit, and then an additional monthly rental charge to live with an assistance animal.  Mr. Norstedt protested these additional charges, feeling they were unfair and unlawful, and withdrew his rental application.

21.     Mr. Norstedt contacted the Fair Housing of the Dakotas and complained about Goldmark's assistance animal policy.  FHD counseled Mr. Norstedt regarding the applicable fair housing laws and his fair housing rights.

### C.  Betty Martin and Clarica Martin

22.     In November 2008, Betty Martin and her daughters Tina Martin and Clarica Martin moved into unit 106 at the Sunwood Apartments located in Fargo and operated by Goldmark.

23.     Betty Martin, 57, is disabled, suffering from a variety of mental and physical impairments, including severe arthritis and depression, that substantially limit his major life activities.   Since 2005, she has received benefits from the Social Security Administration because of her disability.

24.     In early 2009, after consultation with her doctor, Betty Martin decided to obtain a companion dog.  The companion dog was intended for the purpose of ameliorating the effects of her disabilities.

25.     Prior to searching for a dog, however, Betty Martin contacted the Goldmark manager at the Sunwood Apartments.  The manager provided Ms. Martin with an Assistance Animal Request packet.  Pursuant to Goldmark's instructions, Ms. Martin contacted Advantage Credit Bureau to start the Assistance Animal Verification process.  She submitted information and a signature from her medical doctor regarding her need for the assistance animal on the form provided by Advantage Credit Bureau.  She paid $35 to process her application for an assistance animal.

26.     In April 2009, the Goldmark manager at the Sunwood Apartments told Betty Martin that her request for an assistance animal had been approved, but that the

approval was conditioned on her execution of the Assistance Animal Agreement and payment of a non-refundable deposit of $200. She also would be required to pay an additional $20 per month for rental of her unit, and obtain renter's insurance. When Ms. Martin protested those charges, the Goldmark manager stated that they were legal and proper.

27. In response to Goldmark's policies, Clarica Martin searched the internet regarding assistance animals and the fair housing laws, and located and contacted FHD, which counseled Clarica Martin and her mother regarding the applicable fair housing laws and their fair housing rights.

### D. Lacey Anderson

28. Lacey Anderson, 33, is disabled, suffering from a variety of mental impairments since birth, including depression since 1997, that substantially limit her major life activities. Since 1997, she has received benefits from the Social Security Administration because of her disability.

29. In 2004, Ms. Anderson's doctor recommended that she obtain an assistance animal to help ameliorate the effects of her disabilities. Based on that recommendation, Ms. Anderson adopted "Sweet Pea," a short haired cat, who has lived with Ms. Anderson ever since.

30. In June 2006, Ms. Anderson applied to rent an apartment at Griffin Court Apartments, an apartment complex located in Moorhead, Minnesota, and managed by Goldmark. At that time, Ms. Anderson provided Goldmark with a doctor's note regarding her need for Sweet Pea and was allowed to occupy unit number 101 with the cat without having to pay any additional fees, deposits or rent.

31. In July 2009, Ms. Anderson transferred from unit 101 to unit 106 at the Griffin Court Apartments. While processing the transfer, the Goldmark manager told Ms. Anderson that if Ms. Anderson wanted to continued residing with her assistance animal, Sweet Pea, she would be required to pay an additional $100 non-refundable deposit and pay an additional $10 per month in rent. Ms. Anderson protested those charges, but decided to pay and has continued to pay those charges so that she can remain in her home with her assistance animal.

32. With the help of her caseworker, Ms. Anderson contacted a legal aid organization in Moorhead to complain about Goldmark's new policy. The legal aid office referred Ms. Anderson to Fair Housing of the Dakotas, which counseled her regarding the applicable fair housing laws and her fair housing rights

### E.  Kristina Hilde

33. Kristina Hilde, 28, is disabled, suffering from a variety of mental impairments since birth, including depression since 2006, that substantially limit her major life activities. Since 2006, she has received benefits from the Social Security Administration because of her disability.

34. In 2009, Ms. Hilde's doctor recommended that she obtain an assistance animal to help ameliorate the effects of her disabilities. Based on that recommendation, Ms. Hilde adopted "Oddie," a Dachshund, who has lived with Ms. Hilde ever since.

35. Ms. Hilde rents an apartment at Griffin Court Apartments, an apartment complex located in Moorhead, Minnesota and managed by Goldmark. Before adopting Oddie, Ms. Hilde contacted her Goldmark manager, saying that she needed to obtain

an assistance animal because of her disabilities. The Goldmark manager told Ms. Hilde that if she needed an assistance animal, then she would have to apply for permission and pay an application fee. In addition, Ms. Hilde would be required to obtain renter's insurance, pay an additional security deposit, and additional rent in order to live with an assistance animal. Ms. Hilde protested those charges, but decided to pay and has continued to pay those charges so that she can remain in her home with her assistance animal.

36. With the help of her caseworker, Ms. Anderson contacted a legal aid organization in Moorhead to complain about Goldmark's policy. The legal aid office referred Ms. Anderson to Fair Housing of the Dakotas, which counseled her regarding the applicable fair housing laws and her fair housing rights

### F. Fair Housing of the Dakotas

37. Even before the named plaintiffs contacted FHD to complain about Goldmark's assistance animal policies, FHD had received other complaints making the same allegations.

38. On September 17, 2008, FHD received a call on behalf of a disabled woman with an assistance animal, complaining that Goldmark's Ashbury Apartments in Fargo wanted to charge her a deposit for her assistance animal. FHD counseled the caller and her disabled friend about their fair housing rights and commenced an investigation of their allegations.

39. On October 17, 2008, FHD received a call from a disabled man with an assistance animal, complaining that Goldmark's Danbury and Ashbury Apartments in Fargo had a policy of charging a $300 deposit for an assistance animal and an

additional $30 per month in rent. FHD counseled the complainant about his fair housing rights and commenced an investigation of his allegations.

40. On November 20, 2008, FHD received a call from a disabled woman with an assistance animal complaining that Goldmark's Bridgeport Apartments in Fargo wanted to charge her a $200 deposit for her assistance animal and an additional $20 per month in rent. FHD counseled the complainant about her fair housing rights and commenced an investigation of her allegations.

41. As a result of receipt of these allegations of discrimination, FHD conducted an investigation of Goldmark properties using fair housing testers. The testing, conducted in September and October of 2008, confirmed that Goldmark committed discriminatory housing practices.

42. Testers contacted Goldmark's Sierra Ridge Apartments in Bismarck and were informed that a disabled person with an assistance dog was required to apply for an accommodation through Advantage Credit Bureau, and that Goldmark charged an additional, non-refundable deposit for occupancy of an apartment with an assistance dog.

43. Testers contacted Goldmark's Ashbury Apartments in Fargo and were informed that a disabled person with an assistance dog was required to apply for an accommodation through Advantage Credit Bureau, and that Goldmark charged an additional, non-refundable deposit for occupancy of an apartment with an assistance dog.

44. In response to Goldmark's discriminatory housing practices, FHD undertook – and continues to undertake – efforts of education and outreach, including

counseling the victims of discrimination and providing residents with information regarding their fair housing rights. In particular, FHD disseminated educational materials regarding the fair housing laws to Fargo and Bismarck area apartment associations, and materials regarding fair housing rights to the residents of the Goldmark properties about which FHD had received complaints of discrimination.

45. After the filing of the initial complaint in this action on June 16, 2009, FHD received a number of calls from persons complaining that they, too, had been subject to Goldmark's policy of charging a verification fee, additional security deposit and additional monthly rental for the presence of an assistance animal in a Goldmark property unit. From these calls, FHD ascertained that Goldmark utilizes the same discriminatory policy regarding assistance animals at its properties located in Moorhead, Minnesota. Further investigation revealed that Goldmark applies its discriminatory policy regarding assistance animals on a company-wide basis to all of the properties it manages in the States of North Dakota, Minnesota, Iowa and Nebraska.

### G. Injuries

46. By reason of defendants' unlawful acts and practices, FHD has suffered injury to its ability to carry out its purpose and to serve the public in its effort to eliminate housing discrimination, to resolve fair housing disputes, and to find and to make available rental housing, which is free from discrimination. Goldmark's unlawful acts and practices have also caused FHD to suffer economic losses in staff pay, diversion of its scarce resources from other efforts to end unlawful housing practices. Accordingly, FHD is entitled to compensatory damages.

47. As a result of Goldmark's discriminatory practices, Larry Norstedt, Kristina Hilde, Lacey Anderson, Betty Martin and Clarica Martin, and members of the class as a whole, have suffered loss of important housing opportunities, emotional distress, including humiliation, mental anguish, and attendant bodily injury, violation of their civil rights, and incurred additional deposit and rental charges.  Accordingly, Larry Norstedt, Kristina Hilde, Lacey Anderson, Betty Martin and Clarica Martin, and members of the class as a whole, are entitled to compensatory damages.

48. In doing the acts of which plaintiffs complain, Goldmark and its officers, agents, and employees acted with reckless disregard for the requirements of the federal Fair Housing Act.  Accordingly, plaintiffs, including members of the class, are entitled to punitive damages.

49. There now exists an actual controversy between the parties regarding Goldmark's duties under federal law.  Accordingly, plaintiffs, including members of the class, are entitled to declaratory relief.

50. Unless enjoined, Goldmark will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering, and will continue to suffer, irreparable injury from Goldmark's acts and pattern or practice of discrimination unless relief is provided by this Court.  Accordingly, plaintiffs, including members of the class, are entitled to injunctive relief.

## VI.  CLAIM

### [Fair Housing Act]

51. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

52. Goldmark has injured plaintiffs, and each of them, including members of the class, by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. §§ 3601, et seq.

## VII.  PRAYER FOR RELIEF

Wherefore, plaintiffs pray for entry of judgment against Goldmark that:

1. Certifies this action as a class action;

2. Awards compensatory damages according to proof;

3. Awards punitive damages;

4. Declares that defendant has violated the Fair Housing Act;

5. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendant, its contractors, agents, employees, assignees, and all persons acting in concert or participating with it, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to disability;

//

//

//

//

//

//

//

//

//

- 17 -

6. Awards costs of this action, including reasonable attorneys' fees, to plaintiffs; and

7. Awards all such other relief as the Court deems just.

Dated:  October 13, 2009.                    Respectfully submitted,

                                             BRANCART & BRANCART

                                             /s/ Christopher Brancart
                                             Christopher Brancart
                                             Brancart & Brancart
                                             Attorneys for Plaintiffs


BRANCART & BRANCART
  Christopher Brancart (ND Bar No. 6170)
  cbrancart@brancart.com
Post Office Box 686
Pescadero, California 94060
Tel:  (650) 879-0141
Fax:  (650) 879-1103