IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Fair Housing of the Dakotas, Inc., Larry Norstedt, Betty Martin, Clarica Martin, Lacey Anderson, Kristina Hilde, each individually and on behalf of a class of similarly situated persons,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Goldmark Property Management, Inc.,<br><br>　　　　　　　Defendant. | Civil No. 3:09-cv-58<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant Goldmark Property Management, Inc.'s Motion for Summary Judgment (Doc. #68). Plaintiffs filed a response to the motion (Doc. #133). Additionally, the North Dakota Apartment Association filed an *Amicus Curiae* brief supporting Goldmark's summary judgment motion (Doc. #147), and the United States filed an *Amicus Curiae* brief supporting Plaintiffs' response to the summary judgment motion (Doc. #153). The matter came regularly on for a hearing on February 16, 2011. The Court, having considered the briefs and arguments by the parties, now issues this memorandum opinion and order.

### SUMMARY OF DECISION

Plaintiffs bring this action against Goldmark Property Management alleging discrimination on the basis of disability in violation of the Fair Housing Act. The alleged discriminatory policy is a mandatory application fee, non-refundable deposit, and monthly charge that Goldmark imposes on tenants with disabilities who reside with a non-specially trained assistance animal (i.e. a companion pet). These same fees are waived for tenants with disabilities who reside with a trained

1

assistance animal (i.e. a seeing eye dog).  The FHA encompasses all types of assistance animals regardless of training; therefore, Goldmark's policy implicates the FHA.  Further, Plaintiffs have met their burden of establishing a prima face case of discrimination and have presented sufficient evidence to create  genuine issues for trial on the questions of the necessity and reasonableness of the requested accommodation and whether Goldmark's alleged objective for the policy is permissible under the FHA and not pretextual.  Therefore, Goldmark's motion for summary judgment is granted in part and denied in part.  It is granted as to Plaintiffs' claim of disparate treatment because no proof was offered of a discriminatory intent.  It is denied as to Plaintiffs' claims of disparate impact and failure to make a reasonable accommodation.

## FACTUAL BACKGROUND

Fair Housing of the Dakotas (hereinafter "FHD") is a nonprofit corporation organized with the goals of promoting equal opportunity to all individuals seeking housing and eliminating all forms of illegal housing discrimination (Doc. # 24, Second Amended Complaint ¶ 4).  FHD brings this action under the Fair Housing Act, alleging Goldmark Property Management, Inc. (hereafter "Goldmark") discriminates against persons with disabilities with regard to its policy on non-specially trained assistance animals.  The individual plaintiffs bring this action on their own behalf and on behalf of all persons with disabilities who since June 16, 2007, have either sought housing at a Goldmark-managed property with an untrained assistance animal or occupied a dwelling at a Goldmark-managed property with an untrained assistance animal.

Goldmark designates the buildings it manages as either "pet friendly" or "no pets" (Doc. #70, Aff. of Brad Williams ¶ 7).  In "pet friendly" buildings, tenants are required to pay a non-refundable fee and a monthly pet charge.  Id. at ¶¶ 7-8.  If, however, a tenant needs a specially trained assistance

animal for a qualifying impairment, Goldmark accommodates the tenant and waives all fees, regardless of whether the building is designated as "pet friendly" or "no pets." Id. at ¶¶ 8, 12.

On September 2, 2008, Goldmark instituted a policy of charging a non-refundable fee and a monthly pet charge for "non-specially trained" assistance animals (commonly referred to as "companion pets") in "no pets" buildings  (Doc. #70, Aff. Williams ¶ 10).  This fee is lower than the typical pet fees imposed in "pet friendly" buildings.[1]  Goldmark contends the fees for the non-specially trained assistance animals are necessary to recoup a portion of the costs associated with the animals, including steam cleaning, carpet replacement, subfloor resealing, baseboard damage, sheet rock damage, vinyl damage, blind replacement, damage to grounds and shrubbery, common area cleaning, odor removal, and labor for feces pickup, and the "non-quantifiable aesthetic loss due to discolored snow and grounds by common sidewalks and exterior common areas." Id. at ¶ 13.

A tenant or prospective tenant wanting to live with an assistance animal in a Goldmark-managed property must complete a questionnaire,  pay a $30 processing fee, and provide proof of renters insurance (Doc. #70, Aff. Williams ¶¶ 18 - 20).  The processing fee is waived for specially trained assistance animals.  Id. at ¶ 21.  Tenants or prospective tenants are required to submit their application to Advantage Credit Bureau.  Id. at ¶ 19.  Advantage Credit Bureau then sends a letter and a form to be completed and signed by a physician, psychiatrist, or psychologist (Doc. #134-14, Advantage Credit Bureau letter and form).  Beginning in March 2009, the cover letter from Advantage Credit Bureau informs the applicant that the form "needs to be completed by a qualified

---

[1] For a dog, the non-refundable fee is $300 and the monthly charge is $30.  For a cat, the non-refundable fee is $200 and the monthly charge is $20.  For a non-specially trained assistance dog, the non-refundable fee is $200 and the monthly charge is $20.  For a non-specially trained assistance cat, the non-refundable fee is $100 and the monthly charge is $10  (Doc. #70, Aff. Williams ¶¶ 8, 10).

professional and at a minimum needs to be counter-signed by a treating physician or psychologist." Id. It also informs the applicant that he or she is to contact Advantage Credit Bureau if the assistance animal requires special training. Id. Goldmark does not provide any written guidance to its tenants or prospective tenants with regard to the meaning of special training (Doc. #134-7, Stephan dep. p. 36 of 71). If a tenant states the assistance animal has training, Goldmark accepts that statement as true. Id. at p. 37.

Goldmark told some of the Plaintiffs in this case about the additional non-refundable pet deposit and monthly pet fee before they applied for approval for an assistance animal and some were told of the additional fees after approval (Doc. #134-1, Decl. of Larry Norstedt; Doc. #134-2, Decl. of Betty Martin; Doc. #142-5, Decl. of Kristina Hilde Carter). Some of the plaintiffs have paid the additional fees and other plaintiffs are unable to afford the additional fees. Id. The most recent cover letter from Advantage Credit Bureau informs the applicant that they will have to provide "evidence of renter's insurance, along with a non refundable assistance animal fee and assistance animal monthly rent." (Doc. #134-14, p. 2). The letter, however, does not contain the fee amounts.

Goldmark moves for summary judgment contending the fees imposed for non-specially trained assistance animals do not implicate the Fair Housing Act as a matter of law. Goldmark further contends that its fees are reasonable and waiver of the fees is not necessary to afford disabled persons an equal housing opportunity.

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). Evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts. Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989). If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing a genuine issue for trial. Donovan, 289 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).

### 2. The Fair Housing Act

The Fair Housing Act (hereafter "FHA") makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap." 42 U.S.C. § 3604(f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). For purposes of the FHA, discrimination includes a refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

A.     Goldmark's Policy Implicates the FHA

Before analyzing the merits of Plaintiffs' claims, the threshold issue that must be decided is whether Goldmark's assistance animal policy for non-trained pets implicates the FHA at all. Goldmark contends the FHA applies only to specially trained animals. This Court disagrees.

Neither the text of the FHA nor the implementing regulations define the types of animals that qualify as a "reasonable accommodation" or identify the type of training, if any, that is required in order for an animal to fall within the purview of the statute. Courts are divided on the issue.

Courts holding specialized training is required before a pet constitutes "a reasonable accommodation" under the FHA have borrowed from the definition of service animal found in regulations adopted to enforce the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.[2] Assenberg v. Anacortes Housing Authority, C05-1836RSL, 2006 WL 1515603, *3 (W.D. Wash. May 25, 2006); Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F.Supp.2d 1245 (D. Hawaii 2003), aff'd sub nom, DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175 (9th Cir. 2006); In re Kenna Homes Co-op. Corp., 557 S.E.2d 787 (W.Va. 2001). Other courts holding animals need not be specially trained in order to qualify as "a reasonable accommodation" under the FHA rely on regulations promulgated by HUD. Overlook Mut. Homes, Inc. v. Spencer, 666 F.Supp.2d 850, 858-59 (S.D. Ohio 2009); See Lucas v. Riverside Park Condominiums Unit Owners Ass'n, 776 N.W.2d 801, 809 (N.D. 2009) (collecting cases that have

---

[2] "Service animal" is defined in 28 C.F.R. § 36.104, which was created for purposes of the ADA, as "any guide dog, signal dog, or other animal *individually trained* to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items." (emphasis added).

analyzed whether a companion pet must have specialized training in order to prevail in a reasonable accommodation case).

The difficulty with engrafting the ADA's definition of service animal into the FHA is the distinct purposes the two statutes serve. The district court in Overlook highlighted the differences:

> The FHA, in contrast with the ADA, does not regulate disability discrimination by public accommodations and in places of public accommodation. Rather, the FHA, *inter alia*, makes it illegal to discriminate against handicapped individuals in providing housing. 42 U.S.C. § 3604(f)(1). Simply stated, there is a difference between not requiring the owner of a movie theater to allow a customer to bring her emotional support dog, which is not a service animal, into the theater to watch a two-hour movie, an ADA-type issue, on one hand, and permitting the provider of housing to refuse to allow a renter to keep such an animal in her apartment in order to provide emotional support to her and to assist her to cope with her depression, an FHA-type issue, on the other.

666 F.Supp.2d at 858-59. While both the ADA and FHA prohibit discrimination on the basis of disability, it is not unexpected that different rules might govern in public places versus private dwellings.

The United States Department of Justice (hereafter "DOJ") and the United States Department of Housing and Urban Development (hereafter "HUD") have the duty of enforcing the FHA. 42 U.S.C. §§ 3614a, 3612(a) & (o). The DOJ has consistently refused to apply the regulations governing the ADA in the context of residential housing governed by the FHA. Last year, it explained in a final rule interpreting the ADA that its position is that it is permissible to apply similar provisions contained in various federal statutes differently:

> Although in many cases similar provisions of different statutes are interpreted to impose similar requirements, there are circumstances in which similar provisions are applied differently because of the nature of the covered entity or activity, or because of distinctions between the statutes. For example, emotional support animals that do not qualify as service animals under the [ADA] regulations may nevertheless qualify as permitted reasonable accommodations for persons with disabilities under the FHA....

<u>Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities</u>, 75 Fed. Reg. 56236 , 2010 WL 3561890 (Sept. 15, 2010).  The DOJ determined explicitly that public accommodations operating housing facilities may not rely on the ADA definition of service animal as a justification for reducing their obligations under the FHA.  <u>Id.</u>

In support of its summary judgment motion, Goldmark relies, in part, on a statement from the DOJ in a notice of proposed rulemaking pertaining to the ADA that predates the final rule quoted above.  In that notice, the DOJ proposed new regulatory text to formalize its position that "animals whose sole function is to provide emotional support, comfort, therapy, companionship, therapeutic benefits, or promote emotional well-being are not service animals."<u>Nondiscrimination of the Basis of Disability by Public Accommodations and in Commercial Facilities</u>, 73 Fed. Reg. 34508,  2008 WL 2413721 (June 17, 2008).  Even in this notice, the DOJ recognized that "in the context of residential settings and employment, . . . there may be compelling reasons to permit the use of animals whose presence provides emotional support to a person with a disability"; therefore, "other federal agency regulations governing those situations may appropriately provide for increased access for animals other than service animals."  <u>Id.</u>  Thus, the DOJ has consistently concluded that the obligations for making reasonable accommodations when it comes to assistance animals may be different in residential settings than in public places.

Moreover, Congress has charged HUD with the duty to make rules to carry out the FHA.  42 U.S.C. § 3614a. When statutory language is ambiguous, courts are to defer to a "permissible construction" of the statute by the agency charged with administering the statute so long as it is not "arbitrary, capricious, or manifestly contrary to the statute."  <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843-44 (1984).  HUD issued a final rule in 2008, which amended

its regulations governing the requirements for pet ownership in HUD-assisted public housing and multifamily housing projects for the elderly and persons with disabilities. Pet Ownership for the Elderly and Persons with Disabilities, 73 Fed. Reg. 63834, 2008 WL 4690497 (Oct. 27, 2008). In this rule, HUD determined explicitly that the FHA applies to support and therapy animals, not just service animals, as defined by the regulations implementing the ADA. Id. The terms of the FHA can reasonably bear this construction; therefore, the Court must give deference to the interpretation. Chevron, 467 U.S. at 843-44; Meyer v. Holley, 537 U.S. 280, 281 (2003) (deferring to HUD's interpretation of rules regarding vicarious liability for alleged violation of the FHA).

While HUD's interpretation applies only to HUD-assisted public housing, the Court finds the rationale applies equally to all types of housing regulated by the FHA. Imposing a requirement that only animals with specialized training can be deemed "a reasonable accommodation" in the housing context has the effect of discriminating on the basis of disability. Under such an interpretation, landlords would be required to make a reasonable accommodation for individuals with physical disabilities, such as those that are blind or hearing impaired, but would not necessarily have to accommodate those with a mental disability-related need for support, such as depression or anxiety. A determination that animals need not have specialized training to fall within the purview of the FHA ensures the equal treatment of all persons with disabilities who need assistance animals in residential housing. Such an interpretation is consistent with the plain language of the statute, HUD's regulations, and the DOJ's position.

Upon a careful review of the other judicial opinions in this area, the DOJ's explanations of its interpretation of the FHA and corresponding ADA, and after giving deference to HUD's regulations regarding the meaning of the FHA, the Court finds the FHA encompasses all types of

assistance animals regardless of training, including those that ameliorate a physical disability and those that ameliorate a mental disability.

> B. Plaintiffs Have Presented Sufficient Evidence To Survive Summary Judgment on their Disparate Impact and Failure to Make a Reasonable Accommodation Claims

Having found the FHA is implicated, evaluation of discrimination claims brought under the FHA is subject to the McDonnell Douglas burden shifting analysis. Radecki v. Joura, 114 F.3d 115, 116 (8th Cir. 1997). In order to survive summary judgment, a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. Id. If the plaintiff establishes with sufficient evidence a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992). If the defendant satisfies its burden, the plaintiff then has an opportunity to prove, by a preponderance of the evidence, the legitimate reasons advanced by the defendant are a mere pretext. Id.

The elements of a prima facie case of discrimination vary from case to case, depending on the allegations and the circumstances. Badgett, 976 F.2d at 1178. A plaintiff alleging a violation under the FHA can proceed under three theories: disparate treatment, disparate impact, and failure to make a reasonable accommodation. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002). Disparate treatment analysis focuses on whether the defendant treated the plaintiff less favorably than others. Gallagher v. Magner, 619 F.3d 823, 831 (8th Cir. 2010). Proof of discriminatory purpose is crucial for a disparate treatment claim. Id. Summary judgment is appropriate if the plaintiff does not present either (1) direct evidence of discriminatory intent, or (2) indirect evidence creating an inference of discriminatory intent. Id.

10

In contrast, a prima facie case under a disparate impact theory does not require the plaintiff to show the policy or practice was formulated with discriminatory intent. Gallagher, 619 F.3d at 833. Rather, the plaintiff must establish (1) a facially neutral policy or practice that (2) resulted in a significant adverse impact on members of a protected minority group. Id.

As to the third theory, to prevail on a claim for failure to make a reasonable accommodation, the plaintiff must establish the following: (1) he or an associate of his is handicapped within the meaning of § 3602(a) and the defendant knew or should have known of this fact; (2) an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) such accommodation is reasonable; and (4) the defendant refused to make the requested accommodation. Astralis Condominium Ass'n v. Sec'y, U.S. Dept. of Housing & Urban Development, 620 F.3d 62, 67 (1st Cir. 2010); DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006).

### 1. Disparate Treatment Claim

Plaintiffs claim that Goldmark's policy regarding non-specially trained assistance animals was implemented for a discriminatory purpose (Doc. #133, brief in opposition to summary judgment motion, pp. 25-26). They allege the policy intentionally discriminates against persons with mental or emotional disabilities. Goldmark's response is that the policy was implemented to recoup costs associated with damage caused by pets.

The only "evidence" proffered to support Plaintiffs' claim of intentional discrimination is the disparate impact the policy has on mentally disabled individuals. This evidence, on its own, does not demonstrate either direct or indirect evidence of discriminatory intent. Gallagher, 619 F.3d at 833 (concluding evidence of a disparate impact on African-Americans is "not so stark and

11

unexplainable on other grounds to justify, on its own, an inference of discriminatory purpose"). Plaintiffs have failed to come forward with direct evidence that the policy was formulated with discriminatory intent, an essential element in a disparate treatment claim. Further, there is insufficient evidence to reasonably infer discriminatory intent; therefore, Goldmark is entitled to summary judgment on Plaintiffs' disparate treatment claim under the FHA.

### 2.     *Disparate Impact Claim*

Although the arguments in Plaintiffs' brief in opposition to summary judgment focus on Goldmark's intentional discrimination, the allegations in the complaint are not so constrained. Plaintiffs allege discrimination on the basis of disability in violation of the FHA without narrowing their claims to intentional discrimination (Doc. #24, Second Amended Complaint). A fair reading of the complaint includes a claim under the FHA based on disparate impact and a broad reading of the briefs includes arguments that are more appropriately addressed in the context of disparate impact.

Goldmark's policy on non-specially trained assistance animals, on its face applies neutrally to all assistance animals. As applied, however, Plaintiffs contend the policy results in a disproportionate adverse effect on individuals with mental disabilities. The disproportionate effect occurs because animals used to ameliorate physical disabilities are almost always specially trained while animals used to ameliorate mental disabilities like depression or anxiety are not specially trained, but instead provide emotional support and comfort.

In this case, Plaintiffs Larry Norstedt, Betty Martin, Lacey Anderson, and Kristina Hilde are individuals that have diagnosed mental disabilities. For purposes of this motion, Goldmark does not dispute they are "handicapped" as defined in the statute (Doc. #69, Brief in Support of Summary

Judgment Motion, fn. 5, p. 11). These plaintiffs either paid more fees to have an assistance animal in a Goldmark-managed property than those with physical disabilities, or were unable to afford the additional fees and thus precluded from having an assistance animal. Plaintiffs have presented sufficient evidence to demonstrate that Goldmark has implemented a policy that may be facially neutral, but has resulted in an adverse impact on protected members of a minority group. Plaintiffs have met their prima facie case for disparate impact, and thereby shift the burden to Goldmark to show a legitimate, non-discriminatory objective.

Turning to the second step of the analysis, Goldmark contends the sole rationale behind the policy is to recoup costs associated with having animals living at the property. Goldmark has presented a non-discriminatory objective. As such, the burden falls back on Plaintiffs to offer a viable alternative that satisfies Goldmark's legitimate policy objective while reducing the discriminatory impact. Oti Kaga, Inc. v. South Dakota Housing Development Authority, 342 F.3d 871, 883 (8th Cir. 2003).

Goldmark concedes it waives all fees for specially trained assistance animals. If Goldmark's objective in implementing the policy is to recoup costs associated with having animals on the premises, there is a lack of support in the record for distinguishing between non-specially trained assistance animals and specially trained assistance animals. Plaintiffs have thus presented sufficient evidence to raise a genuine issue for trial on whether the justification offered by Goldmark is pretextual. Goldmark's motion for summary judgment on Plaintiffs' disparate impact claim is **DENIED**.

### 3.     *Failure to Make a Reasonable Accommodation*

Plaintiffs also claim Goldmark's policy deprives them of a reasonable accommodation to

which they are entitled under the FHA. For purposes of this motion, Goldmark does not dispute that Plaintiffs are "handicapped" within the meaning of the FHA (Doc. #69, Brief in Support of Summary Judgment Motion, fn. 5, p. 11). Thus, the first element for a prima face case has been met.

The second element in a failure to make a reasonable accommodation claim requires a plaintiff to show that the requested accommodation is necessary to afford "an equal opportunity" to use and enjoy the dwelling. "[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995).

Goldmark has not disputed Plaintiffs' contention that an assistance animal will ameliorate the effects of their mental disabilities. Instead, Goldmark asserts that a waiver of the additional fees will not ameliorate the effects of Plaintiffs' disabilities. Goldmark's argument implies that Plaintiffs are seeking a financial accommodation. The issue is whether Goldmark's policy on assistance animals ought to treat those with mental disabilities requesting non-specially trained assistance animals the same as those with physical disabilities requesting trained assistance animals. The additional fees imposed for non-specially trained assistance animals treats a class of disabled persons differently than other disabled persons. The requested accommodation is not solely aimed at alleviating a financial hardship, as Goldmark contends. The Court finds Plaintiffs have presented sufficient evidence to create a fact question regarding whether the requested accommodation is necessary to afford an equal opportunity to use and enjoy Goldmark-managed properties.

The third element pertains to the reasonableness of the requested accommodation. This issue is ordinarily a question of fact. See Frye v. Aspin, 997 F.2d 426, 428 (8th Cir. 1993) (the question of whether an employer provided a reasonable accommodation as required under the Rehabilitation

Act is a question of fact). An accommodation is reasonable under the FHA if it is "both efficacious and proportional to the costs to implement it." Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 784 (7th Cir. 2002). The burden is on the plaintiffs to show that the accommodation is reasonable on its face. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002). If a plaintiff makes this prima facie showing, the defendant must come forward with evidence to demonstrate unreasonableness or undue hardship. Id. at 402.

Plaintiffs merely seek to be treated the same as those with physical disabilities. They have requested an accommodation that is reasonable on its face. Goldmark has refused to make the requested accommodation. Goldmark has never claimed or presented evidence that granting an accommodation for non-specially trained assistance animals imposes an undue financial or administrative burden or requires a fundamental alteration of the nature of its business.[3] Rather, its defense is that the policy does not run afoul of the FHA and that the fees it imposes are reasonable. Unless Goldmark is claiming an undue financial burden and intends to present evidence that non-specially trained assistance animals cause more damage than other animals thus making the requested accommodation unreasonable, the reasonableness of the fees has little significance in an FHA claim wherein the plaintiffs allege an assistance animal is necessary to ensure an equal opportunity to use and enjoy the dwelling and the additional fees have a disparate impact on them.

Moreover, a Joint Statement of HUD and the DOJ on reasonable accommodations under the FHA makes clear that housing providers cannot impose additional fees as a condition to granting

---

[3] A claim that a requested accommodation would constitute an undue burden is an affirmative defense. Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998). Generally, affirmative defenses are required to be raised in a pleading. Fed. R. Civ. P. 8(c). Whether Goldmark has waived its right to assert a claim of undue burden is not before the Court.

an accommodation, including accommodations for assistance animals. Joint Statement of the Department of Housing and Urban Development and the Department of Justice, <u>Reasonable Accommodations Under the Fair Housing Act</u> (May 14, 2004), can be found at http://www.hud.gov/offices/fheo/library/huddojstatement.pdf. Likewise, HUD's regulations prohibit housing providers from imposing deposits and fees for animals that are necessary as a reasonable accommodation to "assist, support, or provide service to persons with disabilities." 24 C.F.R. 960.705(a). While the regulations apply directly to HUD-assisted public housing, Goldmark has not presented, and the Court cannot find, any reason for applying a different rule.

The Court finds Plaintiffs have presented sufficient evidence to create questions of fact regarding the necessity and reasonableness of their requested accommodation. Moreover, fact questions exists as to whether Goldmark's rationale for imposing the additional fees is pretextual. Goldmark's motion for summary judgment on Plaintiffs' claim for failure to make a reasonable accommodation is thus **DENIED**.

      C.    <u>Genuine Issues of Material Fact Preclude Summary Judgment on Other Issues</u>

Goldmark moves for summary judgment and dismissal of the complaint on the grounds that its policy pertaining to non-specially trained assistance animals does not implicate the FHA and even if it does, it does not violate the FHA as a matter of law. As noted in the previous sections, this Court disagrees with Goldmark's assertions. Nevertheless, in response to the summary judgment motion, Plaintiffs contest a number of issues, including, for example, the rationale underlying the amount of fees imposed for non-specially trained assistance animals, Goldmark's inconsistent application of its renters insurance requirement for persons with assistance animals, and whether unnecessary information is required to evaluate the appropriateness of an applicant's request for an

assistance animal.  Viewing the evidence in the light most favorable to the Plaintiffs, the Court concludes that these are disputed issues that cannot be resolved on summary judgment.  To the extent that Plaintiffs intend to persist in asserting these claims in light of the Court's ruling, those are issues that will need to be resolved by the trier of fact or as a matter of law at trial.

### DECISION

Plaintiffs have failed to demonstrate a discriminatory intent and, therefore, have failed to present a prima facie case for disparate treatment under the FHA.  Nevertheless, Plaintiffs have presented a prima facie case of disparate impact and failure to make a reasonable accommodation under the FHA.  Genuine issues of material fact preclude summary judgment for either party.  Accordingly, Goldmark's motion for summary judgment on the claim of disparate treatment under the FHA is **GRANTED** and is **DENIED** on the claims for disparate impact and failure to make a reasonable accommodation.

**IT IS SO ORDERED.**

Dated this 30th day of March, 2011.

*/s/   Ralph R. Erickson*
Ralph R. Erickson, Chief Judge
United States District Court