# UNITED STATES DISTRICT COURT

## DISTRICT OF NORTH DAKOTA

## SOUTHEASTERN DIVISION

| | |
|---|---|
| **FAIR HOUSING OF THE DAKOTAS, INC., et al., etc.,**<br><br>                 **Plaintiffs,**<br><br>      **vs.**<br><br>**GOLDMARK PROPERTY MANAGEMENT, INC.,**<br><br>               **Defendant.** | **Case No. 3:09-cv-58**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

Class Representatives Kristina Hilde-Carter, Kali Weinand and Kathleen North, on behalf of themselves and the certified classes they represent, seek preliminary approval of the proposed class action settlement with defendant Goldmark Property Management, Inc. ("Goldmark").  This motion is unopposed.

## I.  BACKGROUND

On June 16, 2009, plaintiffs filed this class action alleging that Goldmark's policies applicable to disabled persons seeking reasonable accommodations to live with assistance animals, including requiring payment of an assistance animal processing fee, a non-refundable assistance animal fee and monthly assistance animal rent (collectively referred to herein as "assistance animal fees"), violated the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*  (Doc. 1.)  Goldmark answered, denying that its assistance animal policies violated any law.  (Doc. 9.)

On March 30, 2011, this Court granted in part and denied in part Goldmark's

motion for summary judgment. (Doc. 170.) The Court granted Goldmark's motion on plaintiffs' claims for intentional discrimination under the Fair Housing Act (FHA), but denied Goldmark's motion with respect to plaintiffs' FHA claims for disparate impact and reasonable accommodation. (Id.)

On September 20, 2011, the Court denied plaintiffs' motion for class certification with respect to a proposed Fed. R. Civ. P. 23(b)(2) class, Fed. R. Civ. P. 23(b)(3) class and Fed. R. Civ. P. 23(b)(3) subclass. (Doc. 230.) Plaintiffs filed a renewed motion for class certification, proposing more narrowly defined class definitions, and on November 1, 2011, the Court certified two plaintiff classes, namely:

Under Fed. R. Civ. P. 23(b)(2), seeking equitable relief, a "Current Tenant Class" defined as

> All current tenants of residential properties operated by Goldmark Property Management, Inc. in its "North Dakota Region" who, at any time since September 2, 2008, have occupied a dwelling with an assistance animal pursuant to a reasonable accommodation granted to them by Goldmark, and who paid an assistance animal processing fee, a non-refundable assistance animal fee, or monthly assistance animal rent.

Under Fed. R. Civ. P. 23(b)(3), seeking damages, an "All Tenants Class" defined as

> All persons who, at any time since September 2, 2008, occupied a dwelling operated by Goldmark Property Management, Inc. in its "North Dakota Region" with an assistance animal pursuant to a reasonable accommodation granted to them by Goldmark, and who paid an assistance animal processing fee, a non-refundable assistance animal fee, or monthly assistance animal rent.

(Doc. 255.) As certified, all members of the "Current Tenant Class" are also members of the "All Tenants Class."

In that same order, the Court granted plaintiffs' motion to substitute class representatives and appointed Kali Weinand and Kathleen North as Class

Representatives of the "Current Tenants Class," and Kristina Hilde-Carter, Kali Weinand and Kathleen North as Class Representatives of the "All Tenants Class."  (Doc. 255.)

After certification of the classes, the parties continued their settlement efforts with the assistance of Magistrate Judge Klein and, in February 2012, reached a proposed settlement of the claims of the individual plaintiffs and those of the absent class members.  Plaintiffs' counsel prepared the draft settlement documents.  (Declaration of Christopher Brancart filed herewith ["Brancart Dec."] ¶ 2.)

In late March, Goldmark's counsel raised a new issue regarding Goldmark's right to apply the assistance animal refunds due to certain absent class members as an offset toward monies that those class members owed Goldmark for rent and charges associated with their tenancies.  (See Doc. 274.)  The parties were unable to negotiate a mutually agreeable resolution of that new issue and, in May, submitted the issue to the Court for determination.  (Id.; Doc. 275.)  On June 1, 2012, the Court issued an order requiring the parties to contact class members subject to Goldmark's offset claim and inquire as to whether they disputed the offset claim.   (Doc. 287.)  The parties complied with that procedure.  (Docs. 289, 293, 296, 299).  Of the 31 persons given written notice of Goldmark's request for offset, 4 responded that they do not dispute the offset, 11 responded that they do dispute the offset and 16 failed to respond.  (Doc. 299.)  On September 4, 2012, the Court conducted a status conference concerning the offset issue, and ultimately ordered Goldmark to give the affected absent class members a further notice of amounts owed and of their right to present evidence in support of their objections to the offset at a hearing scheduled for December 20, 2012.  (Doc. 302.)

Meanwhile, on July 3, 2012, pursuant to the stipulation of the parties, the Court

issued an order dismissing the claims of the individual, non-class plaintiffs Lacey Anderson, Larry Norstedt, Betty Martin and Clarica Martin with prejudice, subject to the terms of the release and settlement agreement between those plaintiffs and Goldmark. (Doc. 292.)  Dismissed plaintiffs Lacey Anderson, Larry Norstedt, Betty Martin and Clarica Martin are not parties to the proposed class action settlement.

The procedure for handling Goldmark's request for offsets with respect to a limited number of the absent class members having now been decided upon (see Docs. 301-302), the parties seek preliminary approval of the proposed class action settlement.

## II.  THE PROPOSED RELIEF

The Stipulation and Agreement of Settlement ("Agreement") filed concurrently herewith sets out the terms of the proposed settlement in greater detail.  Capitalized terms used in this motion have the same meaning as in the Agreement.  Together, the "Current Tenants Class" and the "All Tenants Class" are referred to hereinafter as the "Settlement Class."  The individuals within the Settlement Class are hereinafter together referred to as the "Absent Class Members."

Goldmark has agreed to the settlement terms without admitting any actual or potential violations of the applicable law.  The key provisions of the settlement are as follows:

### A.  Refund of Assistance Animal Fees Paid by the Settlement Class

**[Agreement ¶ 15].**  Goldmark will make refund payments to members of the Settlement Class:

1.      Refunding any assistance animal processing fee paid by or on

behalf of each member of the Settlement Class;

2.      Refunding any non-refundable assistance animal fee paid by or on

behalf of each member of the Settlement Class; and

3.      Refunding all monthly assistance animal rent paid by or on behalf

of each member of the Settlement Class.

Goldmark will also refund to Class Representatives Kristina Hilde-Carter, Kali Weinand

and Kathleen North any assistance animal fees paid by or on behalf of those Class

Representatives.  Refund payments are subject to the Goldmark's right to seek an

offset pursuant to the procedure described below.

       **B.      Equitable Terms [Agreement ¶ 17].**  Goldmark agrees that it will:

1.      Discontinue charging assistance animal processing fees, non-

refundable assistance animal fees, and assistance animal rents.

Goldmark discontinued that policy as of April 1, 2012.[1]

2.      Modify its assistance animal informational sheet, assistance animal

questionnaire and policies with respect to assistance animal reasonable

accommodations to comport with the Joint Statement of the Department of

Housing and Urban Development and the Department of Justice -

Reasonable Accommodations Under the Fair Housing Act (the "Joint

Statement"), dated May 17, 2004.  Goldmark made that modification as of

April 1, 2012.

3.      As part of Goldmark's modification of its assistance animal

questionnaire, include a definition of "necessity" and "necessary" stating

---

[1]Goldmark reserves the right to reinstate such charges if, subsequent to final approval of this settlement, such charges are approved by applicable statute, rule, regulation or court decision.  In the event that Goldmark decides to reinstate any such charges, it will provide Class Counsel with notice of that decision at least 30 days prior to the effective date of reinstatement.

that "a necessary accommodation is one that will affirmatively enhance a disabled [person's] quality of life by ameliorating the effects of the disability."  Goldmark made that modification as of April 1, 2012.

4.      Accept assistance animal questionnaires completed by a person in a position to know about the applicant's disability and whether the requested assistance animal is needed because of the effects of that disability.  Goldmark made this modification as of April 1, 2012.

5.      Provide written notice of the above changes to its employees and current residents in Goldmark's North Dakota Region.  Goldmark has provided that notice to employees and current residents in its North Dakota Region.

6.      Apply its insurance verification policy uniformly to all residents.

**C.      Attorneys' Fees [Agreement ¶ 18].**  Goldmark will pay Class Counsel's attorneys' fees and costs in the amount of $204,586.00 subject to Court approval as required by Fed. R. Civ. P. 23(h).  Class Counsel shall petition the Court for approval of the award of attorneys' fees and costs by motion ("Fee Motion") made pursuant to 42 U.S.C. § 3613, to be heard in conjunction with the Court's hearing on final approval of the proposed class settlement.  Goldmark will pay the attorneys' fees and costs approved by the Court separate from and in addition to the refunds paid to the Class Representatives and Absent Class Members.  Goldmark will not oppose Class Counsel's Fee Motion so long as the amount requested does not exceed the agreed upon amount.

**D.      Incentive Awards to Class Representatives [Agreement ¶ 19].**  In connection with the final settlement, Class Counsel will apply to the Court for approval

of incentive awards to the Class Representatives for their service as class representatives as follows:  $500 to Kali Weinand and $500 to Kathleen North, each of whom became involved as potential class representatives in September 2011, and $5,000 to Kristina Hilde-Carter who has represented the class plaintiffs since October 2009.  If approved, those incentive awards will be paid by Goldmark separate from and in addition to the refunds paid to the Class Representatives and Absent Class Members.  Goldmark agrees that it will not oppose the request for incentive awards or cause to be opposed Class Counsel's request for incentive awards so long as the amount requested does not exceed the agreed upon amount.

  **E.** **Cost of Settlement Administration [Agreement ¶ 21].**  Goldmark will pay the cost of class notice and administration of the settlement refunds.

  **F.** **Absent Class Members Against Whom Goldmark Asserts a Right to Offset [Agreement ¶ 16].**  The parties have agreed, with the consent and assistance of the Court, to utilize the following procedure to resolve the issue of Goldmark's requests for offset against certain Absent Class Members' refunds and those individual's objections thereto:

  1. With respect to the Absent Class Members who dispute Goldmark's request for offset, Goldmark will give notice of a hearing to be conducted on December 20, 2012, at 9:00 a.m., at the United States Courthouse located at 655 1st Avenue North in Fargo, North Dakota, at which time those Absent Class Members may appear and/or submit affidavits to Judge Erickson explaining why they dispute Goldmark's request for offset.

  2. Judge Erickson will issue a decision with respect to each of those Absent Class Members' objections and set the amount, if any, of the

Absent Class Member's assistance animal refund that Goldmark is entitled

to claim as an offset.

3.      Judge Erickson's decision will not adjudicate whether the Absent

Class Member is liable to Goldmark for any amount *greater* than the

amount of the offset or the class member's assistance animal refund,

whichever is less.

4.      Judge Erickson's decision will be final and the Absent Class

Member and Goldmark waive their rights to appeal that decision as part of

the settlement of the Litigation.

G.      **Limited Class Release  [Agreement ¶¶ 22-23]**.  Upon final approval, all

Absent Class Members who do not request exclusion from the Settlement Class will

have been deemed to have given Goldmark a limited release, which shall bar them from

asserting any claim that could have been brought in this case under any legal theory,

including the federal Fair Housing Act, arising out of Goldmark's assistance animal

policies, including all claims for emotional distress, punitive damages and any interest

accrued on the fees collected.  Specifically excluded from the release are any claims by

members of the Settlement Class for personal or economic injury or property damage

*unrelated* to Goldmark's assistance animal policies, including but not limited to claims

arising out of Goldmark's alleged failure or refusal to grant an individual's request for

reasonable accommodation, and claims regarding processing or return of security

deposits, breaches of a lease agreement or any other landlord duty imposed by law.

The limited release has no effect on Goldmark's rights under the lease agreements of

the Settlement Class members and applicable laws concerning the landlord/tenant

relationship, including Goldmark's right to charge for specified damages caused to a

unit or common area by an Absent Class Member's assistance animal.

**H.     Execution of General Release by Class Representative Kristina Hilde-Carter [Agreement ¶ 25].** Class Representative Kristina Hilde-Carter, on behalf of herself only, will execute a mutual general release with Goldmark.

**I.     Settlement of Plaintiff FHD's Claims  [Agreement ¶ 24].** Plaintiff FHD agrees to dismiss its claims with prejudice and execute a general mutual release with Goldmark.

**J.     Undistributed Funds [Agreement ¶ 43].**   The parties have agreed that if any refund checks remain uncashed or undeliverable after six months ("void" after six months will appear on the checks), Goldmark may place that money in a separate fund to be used by Goldmark for the maintenance and repair of common areas in Goldmark's buildings in the North Dakota region.  As described below, Class Counsel and Goldmark have agreed on a procedure to make best efforts to contact class members who have not cashed their checks before the expiration of the six-month period.  (Agreement ¶ 42.)  Goldmark has also agreed that if, after refunds to the Absent Class Members have been made, it learns of the existence of a Goldmark tenant or former tenant who was not previously issued a refund check but who did in fact pay assistance animal fees that have not been refunded, Goldmark will promptly refund those fees.  (Agreement ¶ 43.)

## III.  ARGUMENT

**THE PROPOSED SETTLEMENT SHOULD BE APPROVED BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE AND SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23.**

Plaintiffs request that the Court grant preliminary approval of the settlement agreement, approve the form of the class notice, and set a schedule for the final approval process.  A proposed Preliminary Approval Order and proposed Class Notice

are submitted herewith as Exhibit 2 and 3 of the Agreement.

Upon a motion for preliminary approval, the court determines whether the proposed settlement is within the range of possible approval and whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 955 (N.D. Ill. 2005). The settlement proposed by the parties meets the requirements of Rule 23 for preliminary approval.

### A.  The proposed class action settlement satisfies the procedural requirements of Fed. R. Civ. P. 23.

Pursuant to Fed. R. Civ. P. 23(e), a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule 23(e)(1)-(5) sets forth certain procedures applicable to approval of a proposed class action settlement. The settlement proposed here satisfies those procedural requirements. Specifically:

• The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

- A proposed Class Notice is filed herewith. (Agreement, Exh. 3.)

• If the proposal would bind class members, the Court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

- As discussed below, the proposed settlement meets that requirement and should be preliminarily approved and scheduled for a fairness hearing.

• The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

- The parties' Settlement Agreement is filed herewith.[2]

• If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

- Although this class action was previously certified under Rule 23(b)(3), no notice was given to the affected class members because settlement discussions were already underway when the Court entered its certification order.  Thus, the proposed class notice gives notice of both the certification and the proposed settlement and allows an opportunity for members to request exclusion.  (See Proposed Class Notice, Questions 1, 12-15.)

• Any class member may object to the proposed settlement; the objection may be withdrawn only with the court's approval.

- The Agreement and proposed Class Notice provide absent class members with information on how to object, as well as how to appear at the fairness hearing or to request exclusion.  (See Proposed Class Notice,

---

[2]In connection with the settlement of the class claims, plaintiffs also settled the claims of the individual, non-class plaintiffs.  After the finalization of the class settlement was delayed, the parties entered into a separate agreement with the individual plaintiffs, and those plaintiffs' claims were dismissed with prejudice by the Court on July 3, 2012, each party to bear their own costs including attorneys' fees. (Docs. 291, 292.)  In exchange for the execution of mutual, general releases and dismissal of those plaintiffs' claims, Goldmark paid $5,000 each to Lacey Anderson, Larry Norstedt and to Betty Martin and Clarica Martin jointly.  Those payments were separate from, and unrelated to, Goldmark's refund payments to the class.  These plaintiffs were not persons who opted out of the settlement; they are not members of the certified classes.  (Brancart Dec. ¶ 3.)

Questions 18-22.)

Fed. R. Civ. P. 23(h) also provides for certain procedures applicable to attorneys' fees awards in class actions.  The parties' proposed settlement procedures meet those requirements.  Specifically, the proposed settlement provides for an award of attorneys' fees and costs to Class Counsel pursuant to a fee motion brought under the Fair Housing Act, 42 U.S.C. § 3613(c)(2), to be heard in conjunction with the final fairness hearing.  (Agreement ¶¶ 18, 38.)  Notice of the amount of fees requested, the time and place of the hearing on the fee motion, as well as instructions on how to object, are contained in the proposed Class Notice.  (See Proposed Class Notice, Questions 17-20.)  The amount of fees sought by plaintiffs' counsel represents a portion of counsel's lodestar, to be paid separate from the refunds the Settlement Class.  (Brancart Dec. ¶ 4.)

Having been shown to comply with the procedural requirements of Rule 23, the next question is whether the proposed settlement appears to be "fair, reasonable, and adequate" and within the range of possible approval by the Court.

### B.  The proposed settlement is fair, reasonable and adequate.

A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate:  (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975).  The district court acts as a fiduciary, serving as a guardian of the rights of absent class members.  *Id.*  The most important consideration in deciding whether a settlement is

fair, reasonable, and adequate is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* (internal quotations omitted). A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Manual for Complex Litigation, Third § 30.42 at 240 (1997)). Settlement was reached in this case only after hard-fought litigation on the merits and full discovery and with the involvement of Magistrate Judge Klein – it warrants a presumption of fairness.

### 1.   The strength of the plaintiff's case on the merits, weighed against the terms of the settlement.

Plaintiffs' counsel believes that the balance between the merits of the case and the terms of the settlement makes the proposed settlement fair, reasonable and adequate.  (Brancart Dec. ¶ 5.)  Although the Court is not bound by counsel's opinion, that opinion nevertheless is entitled to great weight.  *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).  Counsel believes the balance between the merits of the case and the terms of the settlement is fair, reasonable and adequate for several reasons.

First, all persons who paid assistance animal fees in connection with a reasonable accommodation request will be entitled to a *full* refund of those fees, subject to any offset claim by Goldmark as determined by this Court.  In exchange, class members will be waiving their rights to claim compensatory damages, such as for emotional distress caused by Goldmark's imposition of the fees, and punitive damages, as well as for any interest on the funds while held by Goldmark.  (Agreement ¶ 22.)

Class members will not be giving a general release, but a very narrow one directed at claims related to Goldmark's assistance animal policies.  (Agreement ¶ 22.)

Second, given the Court's prior rulings on summary judgment and class certification, the settlement reflects what would very likely be the expected recovery for each class member were plaintiffs to successfully litigate the case to judgment.  When the Court granted Goldmark's motion for summary judgment on plaintiffs' intentional discrimination claims, plaintiffs' likelihood of obtaining a punitive damages award on behalf of the class was greatly reduced.   (Doc. 170; Brancart Dec. ¶ 6.)  Moreover, when the Court rejected plaintiffs' attempts to certify a more broadly defined class, (see Docs. 182-1 at 23, 201 at 14, 230), it signaled its refusal to entertain claims for emotional distress damages on behalf of class members (to be calculated on an individualized basis after bifurcation of damages or by assignment to a special master). (Brancart Dec. ¶ 6.)  Thus, the punitive damages and emotional distress damages being waived by the Settlement Class in order to obtain full refunds of the assistance animal refunds they paid reflects a nearly perfect balance between "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."  *In re Wireless*, 396 F.3d at 932.

Finally, the proposed settlement includes equitable terms pursuant to which Goldmark has agreed to discontinue charging assistance animal fees and to make the modifications to its policies set forth above.  Those terms inure to the benefit of the current and future residents of apartments managed by Goldmark.

These factors strongly support a finding that the proposed settlement is fair, reasonable and adequate.

//

### 2. The defendant's financial condition.

Over a year ago, Goldmark advised the Court that it had been tracking the amount of assistance animal fees it had been charging and was willing and able to escrow those fees if the Court so directed.  (Doc. 201 at 23.)  There has been no indication from Goldmark that its financial condition is of any concern in terms of resolution of the case.  (Brancart Dec. ¶ 7.)

### 3. The complexity and expense of further litigation.

Had the parties not reached the proposed settlement, additional litigation prior to trial would have been necessary.  Goldmark had a second motion for partial summary judgment on file when the parties reached settlement, seeking to litigate plaintiffs' claims regarding Goldmark's insurance requirements and process for verifying eligibility for reasonable accommodation requests, to dismiss the claims of certain individual plaintiffs, and to dismiss all claims of emotional distress.  (Doc. 246.)  Plaintiffs' response was held in abeyance pending settlement negotiations, and never had to be filed.  (Docs. 257, 259.)  Assuming no settlement had been reached, after the Court ruled on that motion the parties would have had to proceed to trial.  Moreover, any judgment in plaintiffs' favor would likely have been appealed by Goldmark, as indicated by its previous motion for certification of the Court's summary judgment order for interlocutory appeal (denied Doc. 192).  During this time, the class members would receive nothing.  *See In re Wireless Telephone*, 396 F.3d at 933 (recognizing that delay caused by further litigation and likely appeals while the class members received nothing weighed in favor of settlement).  Thus, the proposed settlement in which class members obtain significant relief without the need for the expense, uncertainty and delay caused by further litigation, weighs in favor of a finding of fairness, reasonableness and

adequacy.

### 4. The amount of opposition to the settlement.

The amount and nature of any opposition is not known at this time, but plaintiffs'
counsel does not anticipate opposition because the settlement provides for a full refund
of fees paid (subject to offset), and the costs associated with administration of the
settlement, the potential class representative incentive awards and plaintiffs' counsel's
request for attorneys' fees and costs are all to be paid in addition to the refunds, not
taken out of class members' potential recovery.  (Brancart Dec. ¶ 8.)  Moreover,
because the Fair Housing Act provides for an administrative remedy via complaint to
HUD or the North Dakota Department of Labor (NDDOL), a number of the absent class
members who have been interested in pursuing their own claims have already done so.
(Id.)  The majority of those administrative complaints, put on hold pending the resolution
of this case, have now been conciliated by HUD and NDDOL.  (Id.)

### 5. The proposed settlement contains procedural safeguards to ensure fairness and efficacy.

In addition to satisfying the factors just listed, the proposed settlement should be
preliminarily approved because the parties have put in place procedures to further
ensure the fairness and efficacy of the refund process.  The proposed settlement does
not require absent class members to make a claim for their assistance animal refunds.
Instead, upon final approval, Goldmark will mail refund checks directly to class
members without their need to take further action.  The addresses to be used for the
mailing are the most recent last known – which will already have been updated during
the notice period prior to final approval.  (Agreement ¶ 39.)  The Agreement requires
Goldmark to forward checks returned with forwarding addresses and to obtain more

current addresses for absent class members if necessary.  (Agreement ¶ 40.)  Sixty days after mailing the checks, Goldmark will provide Class Counsel with a list of persons who have not cashed their checks or whose checks have been returned in the mail as undeliverable, along with the Goldmark rental application for each of those persons.  (Agreement ¶ 42.)  Using the identifying information contained on those rental applications, Class Counsel will make further efforts to locate the absent class members to ensure they receive and cash their refund checks.  As noted above, Goldmark has also agreed that if, after refunds to the absent class members have been issued, it learns of the existence of a Goldmark tenant or former tenant who was not previously issued a refund check but who did in fact pay assistance animal fees that have not been refunded, Goldmark will promptly refund those fees.  (Agreement ¶ 43.)  Thus, unlike settlements requiring class members to make claims which often result in low participation rates, the proposed settlement here will provide real benefits to a substantial number (if not all) of the absent class members.

### C.  The Court should issue the proposed preliminary approval order, approve the proposed class notice, appoint class counsel and set a date for the fairness hearing.

Where the district judge is already familiar with the case, the preliminary fairness evaluation may be made without a formal hearing, based on the judge's knowledge as supplemented with briefing by the parties.  See Federal Judicial Center's Manual for Complex Litigation, Fourth (2004) ("Manual") § 21.632 at 320-32.  Here, this Court is very familiar with the underlying claims – having issued a lengthy summary judgment opinion, as well as the classes certified, and at least some elements of proposed settlement.  (See Docs. 170, 230, 255, 287, 301.)

The proposed order submitted herewith makes a preliminary approval finding,

directs that the class be given notice of the proposed settlement and how to opt out, object and/or appear at the final fairness hearing.  (Agreement, Exh. 3.)  If the Court approves the proposed settlement during the week of October 1, 2012, opt outs and objections would be due during the first week of December and the final fairness hearing could be conducted during the week of December 17th.  The hearing on Goldmark's request for offsets in already scheduled for December 20 of that week.

The proposed Class Notice is based on one of the Federal Judicial Center's plain language model notices.  (See www.fjc.gov, "Class action Notices Page" [last viewed Sept. 25, 2012].)  Within seven days of preliminary approval, plaintiffs' counsel also will set up a website entitled www.goldmarksettlement.com which will contain contact information for Class Counsel and counsel for Goldmark and the following documents in pdf format:  (1) the Settlement Agreement; (2) the Class Notice; (3) the Preliminary Approval Order; (4) the Order granting class certification (Doc. 255); (5) the Order granting in part and denying in part Goldmark's motion for summary judgment (Doc. 170); (6) the Second Amended Complaint (Doc. 24); Goldmark's Answer (Doc. 9), and any additional documents agreed to by the parties in writing.  (Agreement ¶ 30.)

Plaintiffs also request the Court to appoint Brancart & Brancart as class counsel. Under Rule 23(g), a court that certifies a class must also appoint class counsel. Fed. R. Civ. P. 23(g)(1).  Class counsel has a duty to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  In appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the

class." Fed. R. Civ. P. 23(g)(1)(A). Each of those factors weighs in favor of appointing plaintiffs' counsel Brancart & Brancart class counsel.  As set forth in the declaration of Christopher Brancart, the attorneys at Brancart & Brancart have many years of experience in handling federal Fair Housing Act litigation and have represented plaintiffs in a number of certified class actions in federal and state court. (Brancart Dec. ¶¶ 9-11.) During the past three years representing plaintiffs, counsel has expended hundreds of hours and many thousands of dollars identifying and investigating the claims and litigating this action, and has the resources to continue to represent the class through the conclusion of the settlement. (Brancart Dec. ¶ 12.) The requirements of Rule 23(g) are satisfied.

## IV.  CONCLUSION

For all of these reasons, the parties request that the Court issue the proposed preliminary approval order, approve the proposed class notice, appoint class counsel and set a final fairness hearing.

Dated: September 27, 2012

Respectfully submitted,

BRANCART & BRANCART

/s/ Christopher Brancart
Christopher Brancart (ND Bar No. 6170)
cbrancart@brancart.com
Post Office Box 686
Pescadero, California 94060
Tel:  (650) 879-0141
Fax:  (650) 879-1103
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

On September 27, 2012, I served a true and correct copy of the following attached document:

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

upon the following person(s):

| | |
|---|---|
| Mr. Michael Andrews<br>Ms. Krista Andrews<br>Anderson, Bottrell, Sanden & Thompson<br>4132 30th Avenue South, Ste. 100<br>PO Box 10247<br>Fargo, ND 58106<br>mandrews@andersonbottrell.com<br>kandrews@andersonbottrell.com | |

in the following manner(s):

| | |
|---|---|
| | BY HAND DELIVERY:  By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
| | BY MAIL:  By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Loma Mar, California, addressed as set forth and indicated above. |
| | BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY):  By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
| | BY FACSIMILE:  By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |
| XX | BY ELECTRONIC TRANSMISSION OF THE "NOTICE OF ELECTRONIC FILING:"  By electronically filing the document(s) (All counsel are "Filing Users," as indicated above). |

Executed on September 27, 2012, at Loma Mar, California

/s/ Christopher Brancart